**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BILLINGNETWORK PATENT, INC.,** | Case No. 1:17-cv-05636 |
| **Plaintiff,** | Hon. Ruben Castillo |
| **v.** | PATENT CASE |
| **MODERNIZING MEDICINE, INC.,** | JURY TRIAL DEMANDED |
| **Defendant.** | |

**DEFENDANT MODERNIZING MEDICINE, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS COMBINED RULE 12(b)(3)
MOTION TO DISMISS FOR IMPROPER VENUE AND IN THE ALTERNATIVE
RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

*Page*

I.    DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(3) ............................ 1

    A.    Background ..........................................................**Error! Bookmark not defined.**

    B.    Legal Standard and Applicable Law...................**Error! Bookmark not defined.**

    C.    Argument ..................................................................................................... 3

    D.    Conclusion as to Improper Venue................................................................. 3

II.    DEFENDANT'S MOTION TO DISMISS UNDER 12(b)(6).......................................... 4

    A.    Background ................................................................................................... 4

    B.    Legal Standard and Applicable Law.............................................................. 7

        1.    This case should be disposed of at the pleading stage. .................................. 7

        2.    The law of 35 U.S.C. § 101.......................................................................... 8

    C.    Argument ...................................................................................................... 9

        1.    Claim 1 is patent-ineligible under 35 U.S.C. § 101. .................................... 10

            a.  *Alice* Step 1: Claim 1 is directed to an abstract idea ............................... 10

            b.  *Alice* Step 2: Claim 1 contains no inventive concept .............................. 12

        2.    The unasserted claims are patent-ineligible under 35 U.S.C. § 101. ........... 14

    D.    Conclusion as to Failure to State a Claim ........................................................ 15

## <u>TABLE OF AUTHORITIES</u>

*Page(s)*

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
  728 F.3d 1336 (Fed. Cir. 2013)................................................................12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  134 S. Ct. 2347 (2014)................................................................ *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom Inc.,*
  841 F.3d 1288 (Fed. Cir. 2016)................................................................9

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................8

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.),*
  687 F.3d 1266 (Fed. Cir. 2012)................................................................8, 13

*Bilski v. Kappos,*
  561 U.S. 593 (2010)................................................................ *passim*

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014)................................................................11, 13, 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014)................................................................12

*Cuvillier v. Taylor,*
  503 F.3d 397 (5th Cir. 2007) ................................................................8

*CyberSource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366 (Fed. Cir. 2011)................................................................11, 13

*DDR Holdings, LLC v. Hotels.com, L.P.,*
  773 F.3d 1245 (Fed. Cir. 2014)................................................................11

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016)................................................................11

*Hamilton v. United Parcel Serv., Inc.,*
  No. 1:11–CV–240, 2012 WL 760714 (E.D. Tex. Feb. 13, 2012)................................................................3

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.,*
  665 F.3d 930 (7th Cir. 2012) ................................................................8

*Intellectual Ventures I LLC v. Capital One Bank (USA), Nat'l Ass'n*,
   792 F.3d 1363 (Fed. Cir. 2015)...................................................................................11

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)...................................................................................11

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015)............................................................................11, 15

*Johnson-Ester v. Schwarzenegger*,
   No. 09-CV-5384, 2010 WL 1257787 (N.D. Ill. Mar. 25, 2010) (Eastern
   Division) .........................................................................................................................3

*Mastantuono v. Jacobsen Mfg. Co.*,
   184 F. Supp. 178 (S.D.N.Y. 1960).................................................................................2

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012)...............................................................................................9, 10

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)...................................................................................15

*Michod v. Walker Magnetics Grp., Inc.*,
   115 F.R.D. 345 (N.D. Ill. 1987) (Eastern Division) ..............................................2, 3

*Morales v. Square, Inc.*,
   75 F. Supp. 3d 716 (W.D. Tex. 2014)..........................................................................10

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015)...................................................................................13

*Schnell v. Peter Eckrich & Sons, Inc.*,
   365 U.S. 260 (1961).........................................................................................................2

*Shapiro v. Ford Motor Co.*,
   359 F. Supp. 350 (D. Md. 1973).....................................................................................2

*TC Heartland v. Kraft Foods Grp. Brands LLC*,
   137 S. Ct. 1514 (May 22, 2017)...............................................................................1, 2, 3

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016).....................................................................................11

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
   No. CV 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) ........................13

*Ultramercial, Inc. v. Hulu LLC*,
   772 F.3d 709 (Fed. Cir. 2014)...........................................................................8, 12, 13

*Venture Assoc. Corp. v. Zenith Data Sys. Corp.*,
   987 F.2d 429 (7th Cir. 1993) ..................................................................8

**Statutes**

28 U.S.C. § 1400(b) ...................................................................................1, 2

28 U.S.C. § 1406(a) ...................................................................................1, 3

35 U.S.C. § 101 ....................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(3) ............................................................................1, 3

Fed. R. Civ. P. 12(b)(6) ....................................................................1, 4, 7, 8

Local Rule CV-5.5(b) ...................................................................................16

Defendant Modernizing Medicine, Inc. moves to dismiss Billingnetwork Patent, Inc.'s Complaint (Dkt. No. 1) pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) for improper venue and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## I. DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(3)

Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a), Modernizing Medicine respectfully requests that this Court dismiss all claims in Billingnetwork's Complaint for improper venue. Billingnetwork's Complaint, if taken as true, does not establish venue under 28 U.S.C. § 1400(b). Modernizing Medicine is a Delaware corporation with its principal place of business in Boca Raton, Florida, and it lacks a "regular and established place of business" that could create proper venue in this District pursuant to the Supreme Court's recent ruling in *TC Heartland v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (May 22, 2017).

### A. Background

In its Complaint, Billingnetwork pleads only general and unsupported allegations that venue is proper in this District.

> ModMed is currently doing business in this judicial district, has purposefully availed itself of the privilege of conducting business with residents of this judicial district, has purposefully reached out to residents of this judicial district, and has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being haled into court in Illinois.

> Venue in this judicial district is proper under 28 U.S.C. § 1400(b). In addition to the foregoing, ModMed has registered itself with the Illinois Secretary of State to do its business in Illinois and has a designated agent incident to such registration whereby ModMed has regular [sic] and established place of business in Illinois.

(Compl. ¶¶ 9–10.)

Billingnetwork further acknowledges that Modernizing Medicine's state of incorporation is not located in this District. (*Id.* ¶ 5 ("Upon information and belief, Defendant Modernizing Medicine, Inc. is a Delaware corporation . . . .").) Indeed, the ***only*** fact that Billingnetwork pled in

its Complaint that ties Modernizing Medicine to this District is Modernizing Medicine's registration "with the Illinois Secretary of State to do business in Illinois" and designation of an agent incident thereto. (*Id.* ¶ 10.)

**B.**     **Legal Standard and Applicable Law**

On May 22, 2017, the Supreme Court issued its decision in *TC Heartland*, holding that venue in patent cases is governed solely by 28 U.S.C. § 1400(b), which establishes that "[a]ny civil action for patent infringement may be brought in the judicial district [i] where the defendant resides, or [ii] where the defendant has committed acts of [alleged] infringement and has a regular and established place of business." 137 S. Ct. 1514 (2017). "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961).

District courts have interpreted "regular and established place of business" to require "something more" than "[m]ere[ly] 'doing business' in a district." *See, e.g.*, *Mastantuono v. Jacobsen Mfg. Co.*, 184 F. Supp. 178, 180 (S.D.N.Y. 1960). In *Mastantuono*, the district court found plaintiffs failed to show that defendant had a regular and established place of business in a district where, *inter alia*, the defendant designated a particular office within the district as its registered agent for qualifying to do business. *Id.*; *see also Shapiro v. Ford Motor Co.*, 359 F. Supp. 350, 352 n.1 (D. Md. 1973) (finding plaintiff failed to establish defendant had a regular and established place of business where defendant and its subsidiaries were registered to do business within the state). Moreover, courts in this district have found that "an alleged patent infringer has a 'regular and established place of business' in a judicial district only if it ***actually has a place of business there***; activities such as the maintenance of independent sales agents, visits by company representatives, and the solicitation of orders are not enough." *See, e.g.*, *Michod v. Walker*

2

*Magnetics Grp., Inc.*, 115 F.R.D. 345, 347 (N.D. Ill. 1987) (Eastern Division) (some emphasis added).

Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff. *Johnson-Ester v. Schwarzenegger*, No. 09-CV-5384, 2010 WL 1257787, at *2 (N.D. Ill. Mar. 25, 2010) (Eastern Division) (Attached in Ex. A). "Whenever an action could not have been properly brought in a district and no reason appears why it would be more in [the] interest of justice for [the] court to transfer [the] case than to dismiss it, it should be dismissed pursuant to 28 U.S.C. § 1406(a)." *Hamilton v. United Parcel Serv., Inc.*, No. 1:11–CV–240, 2012 WL 760714, at *6 (E.D. Tex. Feb. 13, 2012) (Attached in Ex. B).

### C.     Argument

Plaintiff has not carried its burden to show that venue is proper in this District. As shown above, Billingnetwork has conceded that Modernizing Medicine is not incorporated in Illinois. Billingnetwork has similarly failed to provide any proof that Modernizing Medicine has ***any*** place of business in this District, as courts in this District have deemed requisite to a finding of a regular and established place of business. *Michod*, 115 F.R.D. at 347. The only bare fact that Billingnetwork presented in its Complaint is that Modernizing Medicine is registered to do business in Illinois and correspondingly designated a registered agent within Illinois (as was required). As the case law detailed above makes clear, registering to do business and designating a registered agent pursuant thereto is insufficient to establish a regular and established place of business. Thus, as Billingnetwork failed to allege any specific facts under the recently-clarified *TC Heartland* standard that could support proper venue, Billingnetwork's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a).

### D.     Conclusion as to Improper Venue

For the foregoing reasons, Modernizing Medicine respectfully requests that the Court

dismiss this case for improper venue.

## II.     DEFENDANT'S MOTION TO DISMISS UNDER 12(b)(6)

Modernizing Medicine moves to dismiss this case because the Complaint does not state a claim upon which relief can be granted. The asserted patent claims an abstract idea, and therefore does not meet the eligibility requirements of 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). The claims of the patent-in-suit are directed to the abstract idea of an "electronic billing system." The patentees admitted that electronic billing systems were not new, but wanted to provide a more "cost effective" system utilizing the Internet in order to "tak[e] advantage of current advances in computer software and hardware technologies," none of which they claimed to invent. The claims merely cobble together generic computer components (e.g., a "database server," a "website," a "PC type computer," and a "modem") and then claim the desired result of implementing the fundamental economic practice of an "electronic billing system" on the Internet without any specific non-conventional mechanism for achieving that result. The claims are thus in direct violation of settled patent law and ineligible for patentability under 35 U.S.C. § 101. Resolving these issues does not require discovery or formal claim construction. Therefore, to avoid waste of judicial and party resources unnecessarily litigating invalid patents, Modernizing Medicine requests that the Court dismiss the Complaint pursuant to Rule 12(b)(6).

### A.     Background

U.S. Patent No. 6,374,229 is directed to "electronic billing systems, and more particularly to an integrated internet based or facilitated system for billing, data processing and communication." '229 Patent, 1:8–11. The applicants acknowledged that an "electronic billing system" was not a new concept but noted that the pre-existing computerized billing systems had certain disadvantages. In particular, "[t]he traditional approach to billing for services rendered include[d] the requirement that the business purchase hardware and software as well as trained

personnel to perform the billing function," which required "substantial equipment and set-up cost and on-going system maintenance and salary for personnel with sufficient expertise to operate and manage such a traditional system." *Id.*, 1:13–21. Outsourcing was also used for billing and accounting activities, but it had the disadvantages of "loss of control of data and the inability to have real time access." *Id.*, 1:22–28. The applicants thus longed to "avoid[] the need to purchase expensive equipment or to maintain personnel or infrastructure for billing of services while providing real time access to stored data via an internet service provider (ISP)." *Id.*, 1:49–52.

In order to achieve this business objective, the applicants simply applied the fundamental economic practice of an "electronic billing system" to conventional "available technologies in the computer software and internet arena" for remote computing such as "thin client technology, open database compliant software (ODBC) . . ., and Citrix® technology." *Id.*, 1:60–62, 3:16–20. In other words, the applicants simply relocated billing software that previously executed on a stand-alone computer, *id.*, 1:13–21, to an Internet-based computing system that a user accessed remotely using standard computing tools.

The applicants did not invent the remote access technology they employed. With "thin client technology," software applications are installed and run on the database server and "[a]ll that is transferred to the subscriber's computer is a screen which responds to their input." *Id.*, 1:66–2:6. "Citrix®" technology is similar: "actual applications are executed on the server [and] the subscriber's machines merely acting as terminals." *Id.*, 2:7–13. And "ODBC" software "facilitates the seamless integration with other applications" such that a "remote subscriber can link via modem and an ISP from a remote computer and still have access to the speed and power of the database server." *Id.*, 1:52–59, 2:14–18.

The patent's description of how it applies electronic billing to these remote computing

technologies shows that the applicants employed only conventional means. The specification explains that "subscribers" access a remote database in one of two ways—either through direct access (thin-client technology and a Citrix® server) or through a browser-based system using a generic PC-type computer, a modem, and an ISP connection. *Id.*, 2:56–59.

In the browser-based system, the subscriber logs into a secured site via the Internet to access a billing application website. *Id.*, 3:43–45, 3:51–54. The subscriber inputs data (e.g., company billed, amount billed, and billing address) into data forms that are transferred to the database server. *Id.*, 3:52–57; 2:66–3:2. Query forms "provide each subscriber with access to the database server 32 which, in combination with dropdown lists, select the desired account for access to the database of the data server 32 to retrieve the requested information to the screen of the remote PC." *Id.*, 4:6–13. "The data and query forms are transferred [to the database server] without the need for having the underlying software applications on the subscriber computer hard drive which greatly facilitates both speed and convenience." *Id.*, 4:22–26. No special programming is recited. Instead, the database server produces billing invoices and statements to clients and customers using "appropriate application software." *Id.*, 2:59–65.

Claim 1, the only claim asserted in this case (Dkt. No. 1, ¶¶ 21–26), is directed to this browser-based subscriber access:

> An integrated internet facilitated billing, data processing, and communication system comprising:
>
> > *a database server* and *a home page of a website* which provides access via an internet service provider (ISP) to said database server by a plurality of browser-based subscribers each of which have electronic access to said home page via *a modem and the ISP*;
> >
> > said home page providing only secure access by each browser-based subscriber to one of a plurality of subscriber areas within said system;
> >
> > *means for providing electronic transfer* of substantially only billing and data entry forms to the browser-based subscriber upon request, data entered

6

on said forms, when electronically returned to a corresponding said subscriber area, then entered into said database server, said database server then, utilizing *an appropriate application software* thereon, producing billing invoices and statements to clients and customers for each corresponding browser-based subscriber;

*means for providing real time electronic viewing and query access* of data and billings stored in said database server by each corresponding browser-based subscriber;

*a PC type computer electronically connected to said database server* for controlling said forms as required and responding to queries entered by each browser-based subscriber.

'229 Patent, cl. 1 (emphasis added).

As shown above, the claim recites no new software programming logic, no new hardware, no new uses or implementations of conventional software or hardware, by which the desired result of Internet-based "electronic billing" may be achieved. And although the system of Claim 1 provides "real time electronic viewing and query access" of data stored in the database server, neither the claim nor the specification explains how that result is accomplished in the browser-based system.

The non-asserted claims, which are directed to the same abstract idea of "electronic billing," fare no better, adding no meaningful limitations or inventive concept. For example, dependent Claim 2 includes the additional limitation that data is transferred into the database server according to "business logic and rules." *Id.*, cl. 2. Dependent Claim 3 specifies that the database server includes ODBC-compliant software. *Id.*, cl. 3. Dependent Claims 4 and 5 and independent Claims 6 and 7 relate to direct access subscribers who access the database using "available" thin-client technology. *Id.*, cls. 4-7.

## B. Legal Standard and Applicable Law

### 1. This case should be disposed of at the pleading stage.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S.

593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). Claim construction is not required to conduct a § 101 analysis. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must provide "allegations that raise a right to relief above the speculative level." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Documents that a defendant attaches to a motion to dismiss may be properly considered "if they are referred to in the plaintiff's complaint and are central to her claim. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions"). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

### 2. The law of 35 U.S.C. § 101.

Abstract ideas are ineligible for patent protection under 35 U.S.C. § 101 because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of

scientific and technological work." *Id.* at 653.

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted). The analysis requires, especially during the first step, that the claim at issue be compared to claims with a "similar or parallel descriptive nature" that have been analyzed in previous cases. *Amdocs (Isr.) Ltd. v. Openet Telecom Inc.*, 841 F.3d 1288, 1296 (Fed. Cir. 2016) ("We begin, then, with an examination of eligible and ineligible claims of a similar nature from past cases.").

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it'" to a computer. *Alice*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). A claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity— such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01. Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Id.* at 1300.

### C.    Argument

Because the '229 Patent claims the abstract idea of an "electronic billing system" and lacks an "inventive concept" sufficient to "transform" the claimed subject matter into a patent-eligible application of that idea, it is patent-ineligible under § 101. The claims of the '229 Patent merely recite the performance of a known, fundamental economic practice—an electronic billing

system—along with the requirement to perform it on the Internet utilizing conventional remote-access methods, arranged in a conventional way, that operate in a conventional manner. The '229 Patent is thus in direct violation of well-settled law. The Supreme Court, in a line of cases culminating in *Mayo*, has repeatedly cautioned that abstract ideas such as these are patent-ineligible in the absence of an inventive concept.

> **1.** **Claim 1 is patent-ineligible under 35 U.S.C. § 101.**
>
> **a.** **_Alice_ Step 1: Claim 1 is directed to an abstract idea.**

In determining patent eligibility under § 101, the court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. The Court must look past the claim language to the purpose of the claim to determine what the invention is trying to achieve. *Morales v. Square, Inc.*, 75 F. Supp. 3d 716, 724 (W.D. Tex. 2014). Stripped of the generic conventional components, all Claim 1 is "trying to achieve" is a less expensive way to implement the fundamental economic practice of an electronic billing system.

Claim 1 broadly recites an "integrated internet facilitated billing, data processing, and communication system." '229 Patent, cl. 1. It recites a handful of conventional computer components (i.e., "a database server," a "modem," a "home page of a website," and a "PC type computer") to perform the following generic Internet functionality: (1) logging in to a web page via a modem and an ISP; (2) entering data on a form; (3) sending the form to the database server; (4) storing the data; (5) producing a bill or invoice; and (6) querying the database server. *Id.*

As acknowledged by the specification, modems, databases, servers, and websites were routine and conventional at the time of the '229 Patent's application in 1999. None of the generic components in Claim 1 are described as employing any specific nonconventional mechanism, and no specialized programming or algorithms are provided. Indeed, the applicants acknowledged that "electronic billing" was not new. *Id.*, 1:13–16. Nor were the "available technologies in the

computer software and internet arena" like "thin-client" technology and "ODBC-compliant software," which are not even mentioned in Claim 1. The conventional computer components recited in Claim 1 are used only for sending, receiving, processing, and storing data over the Internet—basic functions of any general purpose computer.

Moreover, there is no specific non-conventional application of the idea, as Claim 1 contains no meaningful restrictions on how to implement the idea. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (affirming invalidity where the claim "contains no restriction on how the result is accomplished" and where "[t]he mechanism for maintaining the state [in a web browser] is not described, although this is stated to be the essential innovation"). Nor do the limitations in Claim 1 "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), or by improving "the way a computer stores and retrieves data in memory," *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1339 (Fed. Cir. 2016); *see Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016).

That the claim is limited to an electronic billing system on the Internet does not make it any less abstract. *See, e.g.*, *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (use of Internet to verify credit-card transaction abstract); *Intellectual Ventures I LLC v. Capital One Bank (USA), Nat'l Ass'n*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (method for "tracking financial transactions to determine whether they exceed a pre-set spending limit (i.e., budgeting)" using the Internet and telephone networks "[did] not render the claims any less abstract"); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (limiting an abstract idea to a particular

environment "does not make the claims any less abstract for the step 1 analysis").

The concept of "electronic billing" is similar to other "fundamental economic practices"—implemented with computing technology—that have been held to be abstract ideas by both the Supreme Court and the Federal Circuit. *See, e.g.*, *Alice*, 134 S. Ct. at 2357 (intermediated settlement); *Bilski*, 561 U.S. at 611 (risk hedging); *Ultramercial*, 772 F.3d at 715 (using advertising as an exchange or currency); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (data collection); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1346 (Fed. Cir. 2013) (generating tasks in an insurance organization). Like the claims in each of these cases, Claim 1 is directed to a patent-ineligible abstract idea (i.e., an electronic billing system) under the first prong of the *Alice* framework.

### b.     *Alice* Step 2: Claim 1 contains no inventive concept.

Because Claim 1 is directed to an abstract idea, the Court must next determine whether the claims contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, the claim "must include additional features" which "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotations and citations omitted). Here, Claim 1 is broadly generic and does not contain meaningful limitations that would restrict the claim to a non-routine, specific application of the abstract idea of "electronic billing."

The purported purpose of Plaintiff's invention was to take advantage of existing advances in computer software and hardware technologies in order to "avoid the need to purchase expensive equipment or to maintain personnel or infrastructure for billing of services while providing real time access to stored data via an [ISP]." *See* '229 Patent, 1:46–52. The specification admits that electronic billing was routine and that the technology utilized by direct access subscribers (i.e., thin-client and the Citrix® server) and browser-based subscribers (i.e., ODBC-compliant software)

recited in some of the asserted claims was "available." *Id.*, 1:60–62, 3:16–20. But merely performing a task in a more cost effective way by utilizing existing off-the-shelf software and hardware programmed in a conventional way is far from inventive and "does not materially alter the patent eligibility of the claimed subject matter." *Bancorp*, 687 F.3d at 1278.

Implementing electronic billing software on the Internet does not change this result under step 2. *See, e.g.*, *CyberSource*, 654 F.3d at 1372–73 (holding that method for verifying the validity of a credit card transaction over the Internet was invalid under § 101); *Ultramercial*, 772 F.3d at 716 (holding that "use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter"); *buySAFE*, 765 F.3d at 1355 (patent that "describes a well-known, and widely-understood concept—a third party guarantee of a sales transaction—and then applied that concept using conventional computer technology and the Internet" failed *Alice*'s step 2); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (holding that methods of offer-based price optimization in an e-commerce environment were patent-ineligible).

And, while Claim 1 purports to provide "real time electronic viewing and query access," such "real time" capability is not a meaningful limitation sufficient to add an inventive concept to the abstract idea. *See Tuxis Techs., LLC v. Amazon.com, Inc.*, No. CV 13-1771-RGA, 2014 WL 4382446, at *5 (D. Del. Sept. 3, 2014) (the addition of an electronic communications device to perform an otherwise conventional step in "real time" does not save claim from invalidity) (Attached in Ex. C); *see also Bancorp*, 687 F.3d at 1278 (performing a task more efficiently does not materially alter patent eligibility). Moreover, neither Claim 1 nor the specification even explains how the "real time" capability is accomplished in the browser-based system.

Even considering the elements "as an ordered combination," *Alice*, 134 S. Ct. at 2355 n.3, Claim 1 is still patent-ineligible because there is no "order" to its combination. There is simply no

13

description in the claim or specification as to how the purported invention is specially programmed to operate any differently than the prior art to: (1) log in to a web page via a modem and an ISP; (2) enter data on a form; (3) send the form to the database server; (4) store the data; (5) produce a bill or invoice; and (6) query the database server. Just as in *Alice*, "all of these computer functions are 'well-understood, routine, conventional activit[ies]' previously known to the industry." *Alice*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1294) (alterations in original); *see also buySAFE*, 765 F.3d at 1355 ("That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive.").

Considered individually or taken together as an ordered combination, the claim elements fail "to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 134 S. Ct. at 2357 (quoting *Mayo*, 132 S. Ct. at 1294, 1298). Because it is altogether devoid of any meaningful limitations or inventive concept, Claim 1 is thus patent-ineligible under § 101. *See id.* at 2359–60.

### 2. The unasserted claims are patent-ineligible under 35 U.S.C. § 101.

Claims 4 and 5 (which depend from Claim 1) and independent Claims 6 and 7 purport to patent the same abstract idea—electronic billing—but include direct-access subscriber functionality. '229 Patent, cls. 4–7. Claim 3, which depends from Claim 1, is also directed to electronic billing but specifies the database server "includes open database compliant software (ODBC) for seamless integration with other [unspecified] software applications." *Id.*, cl. 3. Claims 3–7 recite the same generic components (database server, ISP, home page, modem) as Claim 1. *Compare id.*, cls. 3–7 with cl. 1. Although some additional computer terms are also recited (e.g., "open database compliant software," "thin client access," "remote terminal commands," and "seamless integration"), those terms are likewise described in the patent as conventional, and no additional limitations are recited. Indeed, the applicants acknowledged that both "thin client" technology and ODBC-compliant software were "available technologies" (*id.*, 1:60–64), and

nothing in Claims 3–7 recites any non-conventional use of that technology or any improvement thereof. Claims 3–7 are thus patent-ineligible because, like Claim 1, they are each directed to the same abstract idea and include no inventive concept or meaningful limitations. *Alice*, 134 S. Ct. at 2359–60.

Claim 2, which depends from Claim 1, specifies that data is transferred into the database server subject to "business logic and rules." '229 Patent, cl. 2. In *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016), the Federal Circuit held that the claims were not directed to patent ineligible subject matter—not because rules were used—but rather because the rules improved the state of morphing art by creating a concrete repeatable process. Here, in contrast, there is no specific information recited about what the business logic and rules in Claim 2 are or how any of the generic components must be configured in an unconventional way in order to apply them. *See Internet Patents Corp.*, 790 F.3d at 1348. Claim 2 is thus patent-ineligible. *Alice*, 134 S. Ct. at 2359–60.

As such, each of the unasserted claims of the '229 Patent fails to pass § 101's important test designed to ensure that the public retain access to the "storehouse of knowledge of all men . . . free to all men and reserved exclusively to none." *Bilski*, 561 U.S. at 601–02 (quotations omitted).

### D. Conclusion as to Failure to State a Claim

For the foregoing reasons, Modernizing Medicine respectfully requests that the Court dismiss this case for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Modernizing Medicine respectfully requests dismissal with prejudice.

Dated:  September 13, 2017          Respectfully submitted,

By: */s/ David B. Conrad*
    Neil J. McNabnay
    mcnabnay@fr.com
    David B. Conrad
    conrad@fr.com
    Theresa M. Dawson
    tdawson@fr.com
    FISH & RICHARDSON P.C.
    1717 Main Street, Suite 5000
    Dallas, TX  75201
    (214) 747-5070 – Telephone
    (214) 747-2091 – Facsimile

**COUNSEL FOR DEFENDANT MODERNIZING MEDICINE, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 13, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5.5(b).

          */s/ David B. Conrad*
          David B. Conrad